**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**SHARON PALLESCHI** *on behalf of Michael D. Palleschi (deceased)*,

                        **Plaintiff,**

    vs.                                    **1:12-CV-1406
                                                (MAD)**

**COMMISSIONER OF SOCIAL SECURITY,**

                        **Defendant.**
_____

**APPEARANCES:**                        **OF COUNSEL:**

**ERWIN, MCCANE & DALY**          **THOMAS C. ERWIN, ESQ.**
23 Elk Street
Albany, New York 12207
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**    **MONICA K. CRAWFORD, ESQ.**
Office of Regional General Counsel
Region II
26 Federal Plaza - Room 3904
New York, New York, 10278
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On May 29, 2009, the decedent, Michael Palleschi (hereinafter "Plaintiff"), filed applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act (the "Act"), alleging a "disability" within the meaning of the Act since April 16, 2009, due to multiple impairments. *See* Administrative Record ("R.") at 83, 84, 124-35. Plaintiff's applications were denied initially, and upon Plaintiff's request, a hearing was held on August 27, 2010. *See id.* at 85-91. Thereafter, the

ALJ issued an unfavorable decision on October 18, 2010, finding that Plaintiff was not disabled within the meaning of the Act. *See id.* at 12-82, 85-91.

Plaintiff timely filed a request for review of the ALJ's unfavorable hearing decision, but Plaintiff died during the pendency of those proceedings. *See id.* at 8-10. As such, his widow, Sharon Palleschi, was substituted as Plaintiff. *See id.* The Appeals Council denied review by letter dated August 22, 2012. *See id.* at 1-4, 214-217.

On September 13, 2012, Plaintiff filed a summons and complaint in this Court seeking judicial review of the Commissioner's unfavorable decision. *See* Dkt. No. 1. The Commissioner filed an answer to the complaint on December 12, 2012. Currently pending before the Court are the parties' cross-motions for judgment on the pleadings. *See* Dkt. Nos. 10, 11.

## II. BACKGROUND

**A.     Relevant facts**

Plaintiff seeks DIB and SSI benefits alleging that he was suffering with a "disability" within the meaning of the Act since April 16, 2009, at age 32, due to multiple impairments, including epilepsy, pancreatitis, hypertension, and alcohol abuse. *See* R. at 60, 66, 109-113, 130. Plaintiff did not engage in substantial gainful activity after his alleged onset date, but he remained insured for purposes of the Act through December 31, 2013. *See id.* at 17.

Plaintiff had a tenth-grade education and a GED, and a history of unskilled work in construction, maintenance, and, work with septic systems and heating/cooling systems; Plaintiff had a learning disability and was in special education classes during school. R. at 42, 43. Plaintiff testified that he last worked in 2009. R. at 45.

Plaintiff had a history of a seizure disorder dating back to head trauma years prior to 2009. R. at 226, 300. Plaintiff testified that he had seizures approximately once per week brought on by exposure to lights and/or sounds. R. at 40. Plaintiff's neurologist, Dr. Tang, advised him not to drive because of his seizures. R. at 40, 538.

Plaintiff was hospitalized on April 16, 2009 for severe chest and abdominal pain after a several-day history of multiple seizures. R. at 557. Plaintiff was diagnosed with gastritis and pancreatitis. R. at 244, 558. Plaintiff was kept in the hospital until May 11, 2009, having suffered hypertension, respiratory distress, alcohol withdrawal, pneumonia, and other complications during his hospital stay. R. at 242, 297-299.

Upon discharge, Plaintiff was fatigued, and he complained of low back pain, muscle weakness, and atrophy; Plaintiff testified that he could not walk for several months, he could not write, and he required a home health aide. R. at 47, 48, 368, 371, 414, 431-433. Plaintiff had physical therapy for his back pain and weakness, but he was in and out of the hospital thereafter for additional seizures, severe abdominal pain, and symptoms caused by pancreatitis, even during periods of abstinence from alcohol. R. at 48, 414, 431-437, 448, 488, 489, 503, 505, 508-511, 551, 552, 556.

Although some of Plaintiff's seizures were historically connected with his alcohol use, Plaintiff contends that he had an underlying, baseline seizure disorder with abnormal EEG activity, and that he continued to have seizures during periods of time when he was not drinking alcohol. R. at 246, 298, 523, 547, 548. Dr. Tang confirmed that Plaintiff remained at risk for seizures even during abstinence from alcohol because of the aforementioned medical factors, and he required medication for his seizure disorder. R. at 523, 524. Further, Plaintiff contends that his pancreatitis, although possibly initially caused by his alcohol use, once contracted, became a

3

chronic condition that required medication and continued to cause Plaintiff severe pain and abdominal symptoms unrelated to, and independent of, his alcohol use. R. at 67, 68, 491, 495, 496, 500, 512-517, 540, 541.

Plaintiff was examined by the Agency's psychologist, Dr. Annette Payne, Ph.D., on August 12, 2009. R. at 439-443. In addition to back pain and fatigue, Plaintiff reported that he suffered with depression, anxiety, and panic attacks secondary to his medical problems, the resultant changes in his medical condition, and the resultant changes in his lifestyle. R. at 440, 442. Dr. Payne found that Plaintiff's affect and mood were anxious and depressed, and his attention, concentration, and memory skills were all mildly impaired. R. at 441. Plaintiff was diagnosed with alcohol dependence, and adjustment disorder with mixed anxiety and depressed mood. R. at 442. Dr. Payne concluded that Plaintiff would have mild-to-moderate difficulties following and understanding simple directions and instructions, performing simple tasks, maintaining a regular schedule, learning new tasks, performing complex tasks, making appropriate decisions, dealing with others, and dealing with changes in the environment. R. at 442.

Also on August 12, 2009, Plaintiff was examined by the Agency's internal medicine consultant, Dr. Kautilya Puri, M.D. R. at 445-448. Plaintiff reported chronic low back pain, worse with lifting and squatting, and muscle weakness after hospitalization. R. at 445. Dr. Puri diagnosed a history of pancreatitis and seizures, low back pain, and high blood pressure, but found that Plaintiff did not have any objective limitations to communication, fine motor, or gross motor, activity, gait, or activities of daily living; Plaintiff was advised not to work from heights, with heavy machinery, not to drive, or to work in the dark. R. at 447, 448.

Plaintiff was involved in an accident with a tractor on or about May 23, 2010, and suffered an injury to his back. R. at 542-544. Plaintiff was diagnosed with a disc herniation at L4-5 and had back surgery for a partial hemilaminectomy and discectomy performed by the neurosurgeon Dr. Marra on May 26, 2010. R. at 545, 546. Plaintiff did well post-operatively but continued to have residual pain and radicular symptoms in his left leg. R. at 533.

At the August 27, 2010 hearing, Plaintiff testified that he could not bend or lift due to pancreatitis, he had a hard time sitting, walking, and/or standing for long periods of time due to back pain and tingling in his feet, and he was taking the narcotic pain medication Oxycodone. R. at 48-51. Plaintiff was also taking Paxil for anxiety and panic symptoms. R. at 52, 53, 73. Plaintiff testified that the Paxil made him fatigued, and his pain resulted in poor sleep, which added to his daytime somnolence and lack of energy. R. at 53, 72, 76, 77. Plaintiff also reported difficulty getting along with family members, was irritable out in public, and was prone to fighting with strangers. R. at 74, 75.

**B.     The ALJ's decision**

On October 18, 2010, the ALJ issued an unfavorable decision. At step one of the sequential analysis, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset of disability of April 16, 2009. R. at 17 (citing 20 C.F.R. §§ 404.1520(b), 416.920(b)). Next, the ALJ determined that Plaintiff's alcohol dependence, adjustment disorder, alcohol-related pancreatitis, alcohol-related seizures, and lumbar spine disorder were severe impairments. R. at 17-18 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). At the third step, the ALJ determined that Plaintiff's impairments did not meet or equal the criteria of the listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. *See* R. at 18-20 (citing 20

C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).  The ALJ next assessed Plaintiff's residual functional capacity ("RFC"), *i.e.*, what Plaintiff could still do — mentally and physically — despite his impairments.  *See* R. at 20 (citing 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e), 404.1545(a), 416.920(a)(4), 416.920(e), 416.945(a)).  The ALJ concluded that Plaintiff could perform sedentary work, as defined at 20 C.F.R. §§ 404.1567(a), 416.967(a),[1] and would experience frequent unscheduled absences and would require frequent unscheduled breaks, and must avoid working around unprotected heights, dangerous machinery, and driving.  *See* R. at 20.  The ALJ found that Plaintiff could not perform his past relevant work. R. at 20-21 (citing 20 C.F.R. §§ 404.1520(e)-(f), 404.1565, 416.920(e)-(f), 416.965).  Finally, at the fifth step, the ALJ found that Plaintiff's nonexertional limitations so narrowed the range of available work that a finding of disabled was appropriate.  R. at 21 (citing 20 C.F.R. §§ 404.1520(g), 416.920(g)).

Having found that Plaintiff was disabled, the ALJ considered whether his alcohol dependence was a contributing factor material to the determination of disability, *i.e.*, whether Plaintiff's mental and physical limitations would still be disabling if he stopped using alcohol. *See* R. at 21-27 (citing 20 C.F.R. §§ 404.1535, 416.935).  The ALJ found that absent substance abuse, Plaintiff would not have a severe impairment, and his impairments would not, neither singly nor in combination, meet or medically equal any listed impairment.  *See* R. at 21-23.  The ALJ found that if Plaintiff stopped using alcohol, he would retain the RFC for light work, as defined at 20 C.F.R. §§ 404.1567(b) and 416.967(b),[2] with no lifting or carrying over fifteen

---

[1] Sedentary work is defined as work that involves lifting no more than 10 pounds at a time, and is performed primarily while sitting, though walking and standing may be required occasionally.  20 C.F.R. §§ 404.1567(a), 416.967(a).

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or
(continued...)

6

pounds and no exposure to unprotected heights, dangerous machinery, or driving.  *See* R. at 23-26.  Given Plaintiff's RFC absent alcohol use, the ALJ found that he could still not perform his past relevant work, but could perform work that existed in significant numbers in the national economy.  *See* R. at 26-27.  Thus, the ALJ concluded Plaintiff was not disabled under the Act.

### III. DISCUSSION

**A.    Plaintiff's arguments**

In his motion for judgment on the pleadings, Plaintiff argues that the Commissioner erred in finding that his substance abuse was a contributing factor material to the determination of disability.  *See* Dkt. No. 10 at 12-13.  Plaintiff claims that the record supports a finding that his "limitations would, and did, remain disabling during periods of time when [he] was not using alcohol."  *Id.* at 12.  Next, Plaintiff asserts that the Commissioner erred in finding that if he stopped the substance use, the remaining limitations would cause no more than a minimal impact on his ability to perform basic work activities, and he would not continue to have a severe impairment or combination of impairments.  *See id.* at 13-14.  Thereafter, Plaintiff contends that the Commissioner erred in finding that if he stopped the substance use, he would have been capable of light duty work.  *See id.* at 15-16.  Finally, Plaintiff argues that the Commissioner erred in utilizing the medical vocational rules to find that he was "not disabled" at step five in the sequential analysis.  *See id.* at 17-18.

---

[2](...continued)
carrying of objects weighing up to 10 pounds.  A job is also in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  20 C.F.R. §§ 404.1567(b), 416.967(b).

**B.     Standard of Review**

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Court must examine the Administrative Transcript to ascertain whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 500-01 (2d Cir. 1998). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations and quotations omitted).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

For purposes of SSI, a person is disabled when he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

In reviewing the denial of a claim, the Court will typically employ the traditional five-step analysis set forth in *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), and other cases. The five-step analysis is detailed as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Id.*

In this analysis, the claimant has the burden of proof as to the first four steps, while the Commissioner has the burden of proof on the fifth step. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Ferraris v. Heckler*, 728 F.2d 582 (2d Cir. 1984).

**C.   Application**

### *1. The ALJ correctly found that Plaintiff's alcohol dependence was a contributing factor material to the determination of disability*

Plaintiff argues that the ALJ erred in finding that his alcohol dependence was a contributing factor material to the determination of disability. *See* Dkt. No. 10 at 12-13. Specifically, Plaintiff argues that he had a documented, underlying seizure disorder that was

9

unrelated to his alcohol use and that his pancreatitis would have remained disabling even if he had stopped drinking. *See id.*

"When there is medical evidence of an applicant's drug or alcohol abuse, the 'disability' inquiry does not end with the five-step analysis." *Cage v. Commissioner of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012) (citing 20 C.F.R. § 416.935(a)). "In 1996, Congress enacted the Contract with America Advancement Act (the 'CAAA'), which amended the Act by providing that '[a]n individual shall not be considered . . . disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled.'" *Cage*, 692 F.3d at 123 (quoting Pub. L. 104–121, 110 Stat. 847 (codified at 42 U.S.C. § 1382c(a)(3)(J))). "The critical question is 'whether [the SSA] would still find [the claimant] disabled if [she] stopped using drugs or alcohol.'" *Cage*, 692 F.3d at 123 (quotation and other citation omitted); *see also* 20 C.F.R. § 416.935(b)(2)(i) ("If [the Commissioner] determine[s] that [the claimant's] remaining limitations would not be disabling, [he] will find that [the] drug addiction or alcoholism is a contributing factor material to the determination of disability"). The claimant bears the burden of establishing immateriality of his or her drug or alcohol abuse. *See Cage*, 692 F.3d at 123.

In the present matter, regarding Plaintiff's alcohol dependence, the ALJ found as follows:

> At the hearing, the claimant testified he has difficulty bending, sitting for prolonged periods, lifting, carrying, seizures up to once a week that can require hospital treatment, and he has abdominal pain from pancreatitis.
>
> If the claimant stopped the substance use, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptom; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the record of medical evidence.

10

> In terms of the claimant's alleged seizure disorder and pancreatitis, the record shows that the claimant's exacerbations of symptoms are intrinsically interconnected with periods of alcohol use.

R. at 24.

In support of this finding, the ALJ first cited to Plaintiff's medical records from April 1, 2009, when he presented to St. Peter's Hospital while experiencing multiple seizures. *See id.* Attending physician Cruz Santos-Mejia, M.D., noted that Plaintiff "'has a history of withdrawal seizures and psychosis,'" and that Plaintiff complained of chest pain that radiated down the left arm. R. at 24. Plaintiff told Dr. Santos-Mejia that the chest pain was constant but he "'kept drinking unquantified amounts of vodka and about 18 beers a day.'" *Id.* Dr. Santos-Mejia diagnosed Plaintiff with seizures, post status epilepticus,[3] that "may be secondary to alcohol withdrawal versus a true seizure." *Id.*; *see also* R. at 233. Plaintiff's discharge diagnosis was "ETOH intoxication/seizure." R. at 24, 222. The ALJ also noted that Plaintiff sought treatment on April 16, 2009 at Ellis Hospital for chest pain. R. at 24. The attending physician, Praveen Anumula, M.D., diagnosed Plaintiff with chest pain secondary to gastritis, alcoholism, alcohol-related seizures, and hyponatremia secondary to alcoholism. R. at 24, 237-38. The ALJ also discussed the consultative examination of Plaintiff by Jennifer Northrop, M.D., on April 16, 2009. R. at 25. Dr. Northrop diagnosed Plaintiff with "'alcoholic pancreatitis superimposed on history of heavy alcohol consumption for more than five years who is also in active alcohol withdrawal.'" R. at 24-25 (quoting Ex. 2F at 7). In a report dated April 29, 2009, Kejian Tang, M.D., Plaintiff's treating neurologist, diagnosed Plaintiff as follows: "This 32-year-old gentleman has a history of alcohol abuse with large amount of alcohol everyday. His alcohol level is always high. The

---

[3] Status epilepticus is a life-threatening neurologic disorder defined as 5 minutes or more of a continuous seizure, or two or more discrete seizures without complete recovery of consciousness between seizures.

11

patient had seizures, and he recently ha[d] pancreatitis, I believe that both seizures and pancreatitis [are] a consequence of alcohol abuse. The patient never had alcohol withdrawal. Therefore, he does not have alcohol withdrawal seizures. However, the epileptologist, Dr. Ritaccio in Albany Med considered some underlying seizure focus. Therefore, alcohol triggered epilepsy cannot be ruled out at this moment." R. at 25, 245-46. Plaintiff was again admitted to Ellis Hospital on October 23, 2009, with complaints of severe abdominal pain. *See* R. at 552. Natalya Rukavishnikova, M.D., noted that Plaintiff "is in high risk for alcohol induced seizures." R. at 555.

Further, the ALJ also discussed a November 9, 2009 treatment consultative examination of Plaintiff by Dr. Jason Heckman. R. at 25. Following his evaluation of Plaintiff, Dr. Heckman recommended conservative management for Plaintiff's pancreatitis. *See* R. at 25 (citing Ex. 16F at 3. Dr. Heckman found that Plaintiff "must remain abstinent from alcohol," and found that "eighty percent of patients will resolve without any intervention besides supportive care and alcohol cessation." R. at 489. When Plaintiff returned for a follow-up visit six-weeks later, Dr. Heckman noted that

> [t]here is 100% improvement. The cyst is remarkably smaller. The pancreatic parenchyma is now identifiable as opposed to his last CT scan where I could not tell where the pancreatic panenchyma was. There is a huge improvement in the amount of inflammation. There is a component of the fluid collection which extends along the retroperitoneum which is remarkably smaller. The patient has had three beers since I last saw him. He has not got himself into Alcoholics Anonymous or SPARC. Overall he feels 100% improved. He still does have some pain requiring pain medication intermittently.

R. at 490.

On January 11, 2010, Dr. Choma indicated that Plaintiff had "'chronic pancreatitis and pancreatic pseudo-cyst secondary to alcohol and smoking,'" and further indicated that Plaintiff

12

was doing "'so much better. His abstinence from alcohol probably has more to do with his favorable outcome at this point than anything else.'" R. at 25 (quoting Ex. 20F at 11).

Next, the ALJ discussed Dr. Tang's record from November 20, 2009, wherein he indicated that Plaintiff had not had a seizure since April 2009 and that he had been abstinent from alcohol since October 2009. *See* R. at 25. Plaintiff's next seizure of record occurred on February 19, 2010. *See id.* Plaintiff had reportedly drank two days prior. *See id.* Attending physician Miroslav Vytrisal, M.D., noted that he doubted Plaintiff's seizure was related to alcohol withdrawal "'since [Plaintiff's] alcohol level is elevated." *Id.* (quoting Ex. 24F at 10). Dr. Vytrisal diagnosed Plaintiff with alcohol abuse and intoxication. *Id.* The ALJ cited to an examination record dated February 26, 2010, wherein Harold Flax, F.N.P., indicated that Plaintiff also reported an exacerbation of his pancreatitis on February 11, 2010; Plaintiff told Mr. Flax "'that his last hospitalization was triggered by drinking four to five beers on one day. Prior to that, he had been avoiding alcohol for several weeks.'" *Id.* (quoting Ex. 18F at 2).

An electroencephalogram ("EEG") performed April 16, 2009, was only "moderately abnormal" and Dr. Naseer Chowdhrey noted that "[t]here is no definitive interictal epileptiform activity noted. Symptomatic treatment for alcoholic withdrawal seizures is suggested." R. at 324. An EEG on November 30, 2009, revealed no abnormalities. R. at 535.

As the record makes clear, the ALJ correctly found that Plaintiff's alcohol abuse was a contributing factor material to the finding of disability. Plaintiff's seizures and pancreatitis were repeatedly diagnosed as a consequence of his alcohol abuse and manifested themselves almost always during or immediately following Plaintiff's consumption of excessive amounts of alcohol. Plaintiff has offered no evidence to support his burden of proving immateriality. As such, the ALJ correctly found that Plaintiff's pancreatitis and seizures would not cause more than minimal

13

limitations on his ability to perform basic work activities absent his alcohol dependence. *See* R. at 22-25.

Moreover, the ALJ correctly found that Plaintiff's mental impairment would not cause more than minimal limitations if he stopped drinking. R. at 22-23. In considering the four areas of function specified in the Commissioner's special technique, the ALJ found that, absent alcohol use, Plaintiff would have no more than mild limitations in his activities of daily living, social functioning, and concentration, persistence, and pace, and no episodes of deterioration of extended duration. R. at 22. The ALJ noted that Plaintiff cared for his seven-year old son during the day and mowed the lawn, though his wife did most of the cooking, cleaning, laundry, and shopping. *See* R. at 19, 176-78, 446. Further, Plaintiff reported no problems getting along with family, friends, neighbors, or other people; he had a good relationship with his wife and mother, and he had several supportive friends. R. at 19, 180, 442.

The ALJ also noted that, while Plaintiff had moderate difficulties with regard to concentration, persistence, and pace, he would have only mild limitations in these areas if he stopped drinking. R. at 19, 22. As the ALJ indicated, the medical evidence showed that Plaintiff's attention, concentration, and memory skills were mildly impaired, and Dr. Payne assessed that Plaintiff would have mild-to-moderate limitations in performing work-related mental activities. R. at 19, 22, 442. At the time of Dr. Payne's assessment, Plaintiff had reduced his drinking, but had not stopped altogether. R. at 440, 442.

Having found that, absent alcohol use, Plaintiff would have no more than mild limitations in the three broad functional areas and no episodes of deterioration, the ALJ correctly concluded that Plaintiff would not have any severe mental impairment. *See* R. at 20; 20 C.F.R. §§ 404.1520a(d)(1); 416.920a(d)(1).

14

Moreover, the ALJ also correctly found that Plaintiff's lumbar spine impairment, which was unrelated to his alcohol dependence, was not disabling. The ALJ noted that Plaintiff's "lumbar spine impairments have not resulted in the type of nerve root compression with accompanying symptoms as delineated in 'paragraph A' of listing 1.04." R. at 18. Further, the ALJ found that the record is absent of the type of objective evidence establishing spinal arachnoiditis described in listing 1.04 paragraph B, and that his lumbar spine impairments have not resulted in the type of pseudoclaudication required by paragraph C of listing 1.04. *See id.*

The "Commissioner acknowledges that, having found Plaintiff's back impairment would limit his ability to perform more than exertionally light work even absent drinking, the ALJ should have found that he had a severe impairment." Dkt. No. 11 at 11. However, as the Commissioner correctly argues, where a case proceeds past step two, the determination of whether a specific impairment is severe becomes irrelevant because the ALJ must consider the combined impact of all impairments, even those that are not severe. *See* 20 C.F.R. §§ 404.1523, 416.923; SSR 82-28. As such, the ALJ's failure to find that Plaintiff's lumbar spine impairment was severe absent his alcohol dependence was harmless because the ALJ continued past this step, found that the impairment did not meet listing 1.04, and also considered the impact of all of Plaintiff's impairments while assessing his RFC. R. at 23-25; *see also Stanton v. Astrue*, 370 Fed. Appx. 231, 233 n.1 (2d Cir. 2010); *Kemp v. Comm'r of Soc. Sec.*, No. 7:10-CV-1244, 2011 WL 3876526, *8 (N.D.N.Y. Aug. 11, 2011) (holding that "any error would have been harmless because the ALJ proceeded beyond step two and considered all of plaintiff's impairments in making the determination that plaintiff could perform other work in the national economy and in determining that plaintiff's claims of additional limitations were not credible").

Considering Plaintiff's functional limitations from his impairments, both severe and non-severe, the ALJ correctly found that, absent alcohol dependence, Plaintiff retained an RFC for a range of light work, in that he could sit for six hours in an eight-hour workday, stand or walk for six hours in an eight-hour workday, lift up to ten pounds frequently and fifteen pounds occasionally, and must avoid unprotected heights, dangerous machinery, and driving. *See* R. at 23, 26. The ALJ also correctly found that Plaintiff retained the RFC for a full range of sedentary work. R. at 27. The ALJ's RFC finding is supported by the opinion of Plaintiff's spine surgeon, Dr. Marra. On June 16, 2010, just three weeks after performing a left L4 lamectomy and discectomy on Plaintiff, Dr. Marra advised Plaintiff to avoid lifting more than fifteen pounds. R. at 533. Dr. Marra further advised Plaintiff to make a gradual return to activities, though Plaintiff reported that he had already resumed doing some "fairly heavy work." *Id.* The opinion of the consultative examiner, Dr. Puri, also supports the ALJ's RFC finding. Dr. Puri assessed that Plaintiff did not have any objective limitations for fine or gross motor activity, but should avoid working around heights, with heavy machinery, and driving. *See* R. at 448. The ALJ properly gave this opinion significant weight, as it was supported by his objective examination findings that revealed no abnormalities other than "mild lumbosacral tenderness." R. at 26; *see also* 20 C.F.R. §§ 404.1527(d), 416.927(d). However, the ALJ noted that Dr. Puri examined Plaintiff before his lumbar spine injury, and therefore, the ALJ gave greater weight to the opinion of Dr. Marra, who was a treating physician and provided a more recent opinion of Plaintiff's functioning. *See* R. at 26.

Further, the record does not support Plaintiff's position that the ALJ erred in failing to find that, absent alcohol use, he would continue to have severe abdominal pain from pancreatitis, with limitations for bending, sitting for prolonged periods, lifting, and carrying, and would need to

16

avoid seizure triggers. *See* Dkt. No. 10 at 16. The medical evidence demonstrates that Plaintiff's pancreatitis was expected to resolve and would be asymptomatic if Plaintiff stopped using alcohol. *See* R. at 490, 517. Further, the medical evidence also demonstrated that, without the aggravating effect of alcohol, Plaintiff's seizures would not cause more than minimal limitations, as demonstrated by the absence of any episodes during the period Plaintiff refrained from drinking. *See* R. at 523.

Moreover, contrary to Plaintiff's arguments, the ALJ correctly found that Plaintiff's allegations were credible at the time he made them, but that, if Plaintiff stopped consuming alcohol, the subjective limitations he described would not remain to the extent alleged. *See* R. at 24. The ALJ correctly noted that Plaintiff's most severe symptoms were directly related to his alcohol consumption, and abated when he abstained from alcohol. R. at 24, 220-299, 495, 500-05, 549-63. Additionally, Plaintiff's claim of total disability is undermined by Dr. Marra's observation that he had been doing "fairly heavy work." R. at 25, 533.

Based on the foregoing, the Court finds that the ALJ correctly determined that Plaintiff's alcohol dependence was a contributing factor material to the determination of disability; and, therefore, the Court denies Plaintiff's motion for judgment on the pleadings on this ground.

### *2. The ALJ correctly found that, absent alcohol dependence, Plaintiff could perform jobs that existed in significant numbers in the national economy*

Plaintiff argues that the "Commissioner erred in holding that Medical-Vocational Rule 202.20 directed a finding of 'not disabled' at Step Five, and erroneously held that there were other jobs existing in significant numbers in the national economy that [Plaintiff] could still have performed when considering [Plaintiff's] condition without alcohol use." Dkt. No. 10 at 17-18. Further, Plaintiff contends that "[b]ecause [he] cannot meet all of the exertional demands of work

17

at a light or even a sedentary level, vocational expert testimony must be produced in order to sustain the Agency's burden of proof at Step Five in the sequential analysis and reliance on the Medical-Vocational Rules cannot be a basis for a finding of 'not disabled' under these circumstances." *Id.* at 18.

Contrary to Plaintiff's assertions, the ALJ correctly found that, absent his alcohol dependence, Plaintiff could perform jobs that existed in significant numbers in the national economy and the Commissioner was not required to call a vocational expert to support this conclusion. First, the ALJ properly found that Plaintiff's nonexertional limitations – avoiding heavy machinery, unprotected heights, and driving – would have little-to-no effect on the occupational base of unskilled light work or sedentary work. R. at 27 (citing SSR 813-14, 85-15). Since Plaintiff's "nonexertional impairments" do not "'significantly limit the range of work permitted by his exertional limitations,'" the ALJ properly relied on the Grid and was not required to call a vocational expert. *See Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) ("If the guidelines adequately reflect a claimant's condition, then their use to determine disability status is appropriate. But if a claimant's nonexertional impairments 'significantly limit the range of work permitted by his exertional limitations' then the grids obviously will not accurately determine disability status because they fail to take into account claimant's nonexertional impairments") (quotation omitted). The ALJ relied on the Plaintiff's age, education, work experience, RFC, and medical evidence, including the records of Drs. Heckman, Choma, Marra, Puri, Payne, and Herrick, in applying the Medical-Vocational Guidelines. *See Zabala v. Astrue*, 595 F.3d 402, 410-11 (2d Cir. 2010) (holding that "the 'mere existence of a nonexertional impairment does not automatically . . . preclude reliance on the guidelines.' . . . A nonexertional impairment 'significantly limit[s]' a claimant's range of work when it causes an 'additional loss of work

capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity'") (internal quotations omitted).

Based on the foregoing, the Court finds that the ALJ correctly found that, absent alcohol dependence, Plaintiff could perform jobs that existed in significant numbers in the national economy and was not required to support his determination by calling a vocational expert. As such, the decision of the Commissioner is affirmed and the Court grants the Commissioner's motion for judgment on the pleadings.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the Commissioner's motion for judgment on the pleadings (Dkt. No. 11) is **GRANTED** and Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and the Court further

**ORDERS** that the Commissioner's decision denying DIB and SSI is **AFFIRMED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of the Commissioner and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: April 11, 2014
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge